FRUGÉ, Judge.
This suit arises out of an action filed by Derta Ardoin claiming personal injuries as well as special damages against Felix Bordelon and his insurer, Liberty Mutual Insurance Company. Judgment was rendered by the trial court in favor of plaintiff for the sum of $22,000.00 for injuries and disabilities received, together with medical expenses and special damages in the sum of $2,104.75 with legal interest at the rate of 7% per annum from date of judicial demand until paid and for the full costs of those proceedings. Defendants-appellants have appealed from the judgment of the lower court and have prayed that the judg *118 ment be reduced. Plaintiff has answered this appeal, and by so doing asserts that the damage award of the lower court be increased. Therefore, the main issue is whether or not the award of damages made in behalf of plaintiff in the lower court was excessive and thereby constituted an abuse of discretion of the trial court. We affirm the trial court in its wise use of discretion. Our analysis of the complete record has resulted in a determination that the judgment as rendered in the lower court was not abusive in nature and, therefore, not made in disregard of the great discretion so vested therein.
The assessment and determination of damages in this case is complicated by the very nature of the injury sustained by the plaintiff. The testimony of the four doctors employed as a source of expert information was not, in and of itself, decisive in demonstrating a one-sided determination of fact. This court finds that the plaintiff was aggrieved by a back injury which affected a cervical disc or a certain number thereof. This is substantiated by the trial court’s judgment (it being best situated to assess the worth of the asserted facts), which must have been founded upon a belief that the expert testimony did demonstrate the existence of such an injury which was the result of or was derived from the accident involved in this suit.
Facts involved in this case are substantially as follows: On August 19, 1969, at approximately 4:00 o’clock in the evening, the plaintiff, leaving work and returning home, was driving east on Bellevue Street. Plaintiff was going through the intersection of Bellevue Street and Market Street, the traffic being regulated at such intersection by a signal light, which at the time of the accident was flashing green as to the plaintiff and red as to the defendant. The plaintiff’s automobile was struck on the left front side by the defendant’s automobile which had been traveling in a southerly direction on Market Street. The impact was sufficient to substantially damage plaintiff’s automobile and was committed with enough evident momentum on the part of the defendant’s automobile to propel this latter automobile into another auto operated by one Robert Batton. Mr. Batton’s auto was, at the time of the accident, pointed in a northerly direction on Market Street and stopped for the red light which regulated the intersection with Bellevue. Robert Batton was an eyewitness who was not contested in his assertion that the defendant did run the light and so strike the plaintiff’s automobile. Apparent injuries to the plaintiff were exemplified by a swelling on the side of the head, and statements were made by him that he was “shook up” but did not seem to be hurt seriously.
Plaintiff was treated by one Dr. Owens, a general practitioner of medicine, eight times between the 26th of August, 1969, and the 10th of September, 1969, as well as on January 6, 1970. Dr. Owens testified that his physical examination of the plaintiff revealed that the plaintiff suffered from a whiplash injury of the neck and a contusion. of the head. Dr. Owens testified that a whiplash and a cervical strain are essentially the same thing. Objective signs of the aforestated injury were indicated by muscle spasms on both sides, as well as by a bruise on the head. Treatment afforded the plaintiff by Dr. Owens consisted of ultra-sound treatments during these eight visits to his office between August 26, 1969, and September 10, 1969. Dr. Owens also testified that he prescribed an analgesic medication. Plaintiff testified that the visit of January 6, 1970, to Dr. Owens was prompted by a recurrence of neck pains and headaches, and further stated that he had not made an earlier visit when these pains seemed to intensify, because he felt that they would go away and would only be temporary in nature.
The second doctor to aid in this case was one Dr. Emile K. Ventre, who was contacted on January 8, 1970, at a time when the plaintiff was suffering from acute pain as a result of his injuries. Dr. Ventre was the main treating physician in *119 volved in this case and saw the plaintiff about 35 times prior to the trial. He prescribed phenylbutazone, an anti-inflammatory agent, as well as muscle relaxers, analgesics, and at times narcotics for pain relief. Initially, deep heat treatments of a diathermic nature were administered to plaintiff’s neck, and then the plaintiff subjected himself to self-administered traction in his own home.
Dr. Ventre’s diagnosis was that the plaintiff suffered from a ruptured disc or herniated nucleus pulposus of the disc between the 5th and 6th cervical vertebra. He also determined that at times there was a great deal of muscle spasm, that there was also a marked restriction of motion of the plaintiff’s neck at times, and at other times the neck was supple and loose. His medical findings further disclosed that the plaintiff had degenerative arthritic disease with a ruptured cervical disc that had partially healed and probably healed as far as it was going to heal. He stated that this rupture was caused by the trattma of the accident, because he had never seen such severe pain in a patient merely from the onset of a degenerative arthritic condition. During his practice he treated three or four thousand cases with degenerative arthritis, and none of them had ever suffered such severe pain in the first three or four months. He stated that he had never seen degenerative arthritis progress on its own from being asymptomatic to causing this type of pain in a four-month period of time, and did not believe that degenerative arthritis alone was the cause of the pain.
Dr. Ventre’s medical conclusion was based on the following factors. First, that the plaintiff had a narrowing of the cervical interspace C-5 and C-6, which was suggestive of the possibility of a disc problem. Secondly, plaintiff evidenced degenerative arthritis which would mean a weakened disc in the neck susceptible to rupture. Thirdly, Mr. Ardoin had a sudden onset of pain three or four months after the accident and that he went from asymptomatic to severely symptomatic within four months. Plaintiff’s relief from pain resulted from traction which would relieve a disc problem and not a muscle sprain. Dr. Ventre further stated that plaintiff had referred pain which suggested the referred pain of a disc injury. These factors collectively gave a sound predicate for his clinical opinion that Mr. Ardoin did have a disc injury.
The third treating physician was one Dr. John B. Jackson, a neurological surgeon at Ochsner Clinic, who was called in as a consultant by Dr. Ventre. Dr. Jackson saw Mr. Ardoin on September 21, 1970. Dr. Jackson diagnosed the patient’s condition to be as follows. A degenerative cervical disc desease was found and was based upon a narrowing of the C4-5, C5-6, and C6-7 interspaces in conjunction with plaintiff’s symptoms. He stated that if the case history as related to him was correct, it seemed like the accident probably caused the plaintiff to start having pain. Dr. Jackson believed that there were degenerated difecs pre-existent to the injury. He stated thatf a person having such a pre-ex-istent disease which is asymptomatic before an injury had a better chance of having symptoms and pain after the injury, than one who had no such pre-existent disease. It was his belief that the injury would aggravate the former condition. His prognosis was that the plaintiff would probably continue to complain and in time would probably require an operation on his neck to relieve the pain. The cost of such an operation would total the amount ot $1,500.00, but‘would only be recommended >as a last resort. Treatment prescribed by Dr. Jackson entailed cervical traction, a muscle relaxer for pain relief, and also heat application to the neck.
A fourth doctor’s medical opinion was solicited in this case from Dr. Fred C. Webre, an orthopedic surgeon, who examined the plaintiff on September 3, 1970, and again on April 23, 1971. Dr. Webre testified that the examination of September 3, 1970, revealed the following findings. First, that the plaintiff’s subjective com *120 plaints were inconsistent'with his examination findings. Secondly, that radiographic examination of the cervical area revealed no evidence of fracture, dislocation, or bone or joint disease. Radiographic examination of the dorsal spine also revealed no evidence of fracture, dislocation, or bone or joint disease. However, there was a finding of diminished sensation in the entire left upper extremity evidencing neurological impairment, but this did not fit any particular dermatome pattern. The doctor’s examination of April 23, 1971, revealed complete ranges of motion of the neck and of the upper extremities. Again, there was a finding of slightly diminished sensation of the entire left upper extremity, which again did not fit any dermatome pattern. The doctor stated that again the subjective complaints were inconsistent with the test results.
Dr. Webre utilized a compression test designed to elicit any impingement on nerve roots and used specifically as a test to determine any disc pathology. The doctor testified that the findings iff this test were negative in nature. The radiographic examinations conducted on this second examination indicated no degenerative disc disease. He specifically stated that there was no narrowing between C-4 and C-S, nor between C-6 and C-7. However, he did state that muscle spasm could be present on some days and not on others, and also that a ruptured or herniated disc would not always show up on x-ray.
Dr. Webre further stated that a treating physician with knowledge of what he was doing was more apt to find definitive objective indications of a ruptured disc than one who sees the patient once or twice over a period of a couple of years. He also stated that, despite his findings, or in spite of his lack of pathological findings, he would not exclude the possibility of a present but undetected ruptured disc.
Examination and consideration of all aforementioned medical opinions creates in the opinion of this court a sufficient basis to support the trial court’s determination that an injury was sustained by the plaintiff in the aforestated automobile accident, and such injury did cause pain and suffering. It is felt that the trial court, being best situated to make determinations of fact, weighed the testimony fully of all doctors involved, and concluded that Dr. Ventre’s testimony, as the treating physician and having the most contact with the patient, was to be given the greatest weight. The testimony of the two specialists was evidently used to some extent, but it is noted that it is contradictory in substantial parts (as a close reading of this opinion will reveal). Therefore, more weight in this matter was given to the testimony of the physician with the greatest first-hand knowledge of the patient’s condition, this being Dr. Ventre.
This court agrees with the statement of learned counsel for the defendant-appellant that self-serving declarations by claimant were insufficient by themselves to support the finding of a causal connection between the injury and clinical disability. It was stated in Smith v. New York Fire & Marine Underwriters, La.App., 182 So.2d 741 at page 744, that “to recover damages for aggravation of a preexisting condition, plaintiff bears the burden of proof. Plaintiff’s narration of complaints is insufficient of itself to establish the existence of injury.” However, in the instant case, it is felt that the testimony of the three treating physicians was such as to establish objective symptoms of plaintiff’s complaint. Testimony further substantiating the existence of plaintiff’s injured or impaired physical state was given by J. Arthur Fontenot, District Manager of the Department of Revenue and longtime friend, by plaintiff’s secretary of nine years, Dorothy Quebedeaux, and by Mrs. Jeanette Ardoin, wife of the plaintiff. The district judge having heard said witnesses must have found that such complaints and impairments were real and present.
*121 It is recognized by this court that uniformity in damage awards is not the primary goal. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149. Similar cases and awards therein should be given some consideration, but should not be given paramount importance in assessing the damage award given to plaintiff in the instant case. We find that the changing economic situation, as well as the individual facts and circumstances of the case require that not too much concern be given to keeping damages for this type of injury in alignment with other prior awards. In so doing, we thereby do not ignore the “much discretion” vested in the trial court. In the court’s determination of the outcome of this case, much reliance has been given to the basic law as set out in Article 1934(3) of the Louisiana Civil Code. This Article states in part:
“In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.”
As stated in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, as well as in Lomenick v. Schoeffler, 250 La. 959, 200 So. 2d 127, the courts of appeal of this state are under a duty to comprehend the “much discretion” of the trial court judge or jury. The Lomenick case, supra, 250 La. 959, 200 So.2d 127, at page 132, further emphasized the duty which bears upon the courts of appeal of this state, as is seen by the following statement:
“This law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court’s examination of the facts reveals a clear abuse of the discretion vested in the lower court.”
This court believes that the trial court, having listened to all of the witnesses and the medical testimony, made a valid assessment of damages and a concurrent, complete and full award to the plaintiff for such injuries and disability, as well as for the special damages suffered.
This court finds that the award of special damages in the amount of $2,104.75 is not abusive in nature, as it entails the damage to the plaintiff’s automobile, “ the rental fee fox another automobile used by plaintiff, and doctors’ bills as well as clinical laboratory bills. It did not include the amount of “The New Drug Store” bill which was deemed by the trial court inadmissible, being not properly identified at the time of its attempted admission and, therefore, properly excluded.
It is decided by this court that the instant case is in accord with former decisions of this court, such as Matthews v. F. Miller & Sons, 146 So.2d 522 (La.App. 3d Cir. 1962), which was subsequently followed in Sensat v. Travlers Indemnity Co., 166 So.2d 316 (La.App. 3d Cir. 1964), as well as in the recent decision, Deville v. United States Fidelity & Guaranty Co., 258 So.2d 694 (La.App. 3d Cir. 1972).
In the Matthews case, supra, the court found that the preponderance of the evidence was to the effect that the plaintiff suffered a ruptured intervertebral disc in the lower hack; in the Sensat case, the court determined that a herniated disc resulted from the accident; in the Deville case, supra, the neurosurgeon diagnosed the plaintiff’s trouble as being a C-6 nerve root compression probably caused by a ruptured disc at the C-5, C-6 level. The awards made in each of these cases convince this court that there was no abuse of the “much discretion” on the part of the trial court in the instant case.
This court has concluded that the Deville case is directly in point and has decided to adopt applicable language thereof to meet the essence of the argument as presented by defendants-appellants. The defendants-appellants here, as well as in Deville, have urged the gross excessiveness of the gener *122 al damage award. The following is held to apply most pertinently:
“[2] They argue that what plaintiff suffered in the collision was at most an aggravation of a pre-existing condition, but neglect that principle of our tort law, too well known to require citation, that a 'tort feasor takes his victim as he finds him. We think the evidence is clearly convincing that plaintiff has suffered pain and disability since the accident which was unknown to him previously.
Defendants cite a number of cases in which lesser awards were made to plaintiffs suffering from similar maladies but we are not thereby persuaded to reduce the award, as we do not consider it to be abusive of the much discretion afforded the trial court in determining the quantum of damages by La.C.C. Art. 1934(3). Matthews v. F. Miller & Sons, Inc., La.App., 146 So.2d 522 (certiorari denied, January 14, 1963.)
We were recently reminded of the extent of that discretion by our Supreme Court in Miller v. Thomas, 258 La. 285, 246 So.2d 16. After quoting from a number of previous cases on the subject, that opinion stated the rule of appellate review of quantum of damages to be as follows:
‘[1,2] From these decisions, two principles emerge: (l)'To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the ‘much discretion’ accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity.! ”
It is also determined that plaintiff’s contention as to the inadequacy of the award is without merit.
For the above and foregoing reasons, the judgment of the district court is affirmed, and the defendants are to pay all costs.
Affirmed.
SAVOY, J., concurs in part and dissents in part and assigns written reasons.