SAVOIE, Judge.
Percy Calloway, plaintiff, filed suit seeking recovery for damages he sustained due to a vehicular accident on January 27, 1985. Calloway’s vehicle was hit by a 1981 Honda owned by Veronica Voisin and driven by Robert Rembert, Jr. (Rembert), who failed to stop at a red light. Calloway filed suit against Rembert’s alleged employer, General Motors Cars & Trucks (General), and General’s liability insurer, Insured Lloyds, among other parties.[1]
The trial was bifurcated, and the liability and insurance coverage issues were tried by the judge. The judge found that Rem-bert was at fault in causing the accident; that Rembert was an employee of General; that Rembert was in the course and scope of his employment with General at the time of the accident; and that there was accordingly coverage under General’s policy with Insured Lloyds. From this judgment, General and Insured Lloyds appeal, urging as error the trial court’s finding that Rembert was an employee of General and/or that he was acting in the course and scope of his employment at the time of the accident.
According to the testimony, Rembert was fifteen at the time of the accident and he occasionally worked for General. General was a small used car dealership owned by Rembert’s father. Rembert’s duties included washing, waxing, and delivering cars, picking up and delivering parts, and going to the bank. Rembert worked after *685 school approximately three days a week and on some Saturdays. He had no set schedule or hours for working, he did not punch a time clock, and he did not work when it interfered with his personal plans. According to Robert Rembert, Sr., his son worked when needed by the dealership.
Rembert was paid in cash for his work by his father; he was not paid by the hour, in any set amount or on any particular day. At one point, Rembert testified that he was paid by the job. No taxes or social security was withheld from his pay. Robert Rem-bert, Sr. testified that his son was not on the payroll. According to Robert Rembert, Sr., “I didn’t pay him any set salary. If he needed to go buy him some clothes or something, I’d give him extra money. It was part of his chores so to speak.” He and his son testified that Rembert also performed chores around the house for which he was paid.
Veronica Voisin’s Honda was dropped off at the General dealership on Saturday, January 26, 1985, the day before the accident. Voisin worked for A-l Bail Bonds, a company owned by Robert Rembert, Sr., and she also was his girlfriend. Robert Rem-bert, Sr. was having the Honda cleaned and polished for Voisin free of charge. He testified that the work was not done for Voisin as a General customer, but was done strictly as a personal favor. A General employee (other than Rembert) cleaned the vehicle on Saturday and drove it to the Rembert house. According to Robert Rem-bert, Sr., the car was brought to his house because his employee did not want to leave it at General, thinking the vehicle would be safer at the Rembert house. Robert Rem-bert, Sr. testified that the employee did not bring the vehicle to the Voisin house (2⅛⅛ miles away from the Rembert home, which was 15 to 20 blocks from the dealership) because Robert Rembert, Sr. never instructed him to do so nor did the employee know where Voisin lived. Robert Rembert, Sr. testified that on Sunday he asked Rem-bert and another son to bring the car to Voisin’s home. According to Rembert, both Voisin and Robert Rembert, Sr. were at the Rembert house at that time. Robert Rembert, Sr. testified that Voisin did not bring the car to her home herself because they were going out to eat and Robert Rembert, Sr. was going to drop Voisin off at her home later. Rembert testified that he was returning Voisin’s car to her home as a favor to her and his father. Rembert received no money for driving the car' to Voisin’s house. The trip was clearly a personal errand for a personal friend and was in no way business related. En route to Voisin’s house, the accident occurred at about 6:15 p.m. On the day of the accident, the General dealership was closed as it was not open on Sundays.
The applicable provisions of the insurance policy in this ease read as follows:
GARAGE INSURANCE AMEND-ATORY ENDORSEMENT
In consideration of the premium charged and of the mutual covenants contained in the policy, it is mutually agreed and declared that the Garage Insurance Coverage Part (which forms a part of this policy) is amended as follows:
1. Item # 2 on the Garage Insurance Coverage Part (A151a) is hereby deleted Driver Amendment (Applies to Garage Insurance Coverage Part [A151a] and Automobile Physical Damage Insurance Coverage Part [A131]):
All automobiles are used principally in the garage operations of the Named Insured except covered autos furnished for the regular use of the drivers listed in the Schedule of Drivers Section of this endorsement. Coverage is not afforded to any covered automobile, the Named Insured, or any driver as a result of any claim or occurrence while a covered automobile is being operated by any driver other than those listed in the Schedule of Drivers Section of this endorsement, except:
(a) Employees of the Named Insured, including Contract employees, age 18 and over, using a covered automobile within the scope of their duties, but only with respect to such duty. No personal usage is afforded unless specified individual driver is listed in the Driver Schedule below.
*686 (b) Bona fide customers of the Named Insured using a covered automobile for demonstration purposes within twenty-five (25) miles of the Insured’s location(s) for a period of time not to exceed twenty-four (24) hours.
(c) Any other person, other than an employee, while operating a covered automobile for purposes of service or repair to that covered automobile with the permission of and for the sole benefit of the Named insured.[2]
We initially will consider whether the trial judge was correct in finding that Rem-bert was in the course and scope of his employment at the time of the accident.[3] We pretermit discussion of whether the trial judge was correct in deciding that Rembert was an employee because of our finding that Rembert was not acting within the scope of his duties at the time of the accident.
The trial judge found that Rembert was using Voisin’s car within the scope of his duties. The trial judge reasoned that if Rembert had been taking Voisin’s car from the dealership to her home when the accident occurred, there would clearly be coverage. He then considered what actually happened — that the car had been brought from the dealership to the Rembert home and that the accident happened en route from the Rembert home to the Voisin home. He found that because it was not shown that the vehicle was relinquished to Voisin’s control prior to the accident and because the General employee brought the vehicle to the Rembert house for safekeeping as a prudent custodian of Voisin’s property, the accident occurred in the course of Rembert’s duties. We disagree with the trial judge’s finding.
The General shop was closed on Sunday, when Rembert attempted to return the Voi-sin vehicle to her home. More importantly, when Robert Rembert, Sr. asked his son to bring Voisin’s car to her home, Voisin was at the Rembert home where her car was. Rembert testified that he was returning Voisin’s car as a favor to both her and his father. Robert Rembert, Sr. testified that Voisin did not drive her car home herself because they were going out to eat and he was going to bring her home afterwards. He corroborated his son’s testimony that Rembert was bringing the car to the Voisin home as a personal favor. Contrary to the findings of the trial court, we find that General’s control of the Voisin vehicle was relinquished when the vehicle and Voisin were present at the same time and place— the Rembert home. This is further evidenced by the fact that Rembert was simply performing a purely personal favor for Voisin and his father in taking the Voisin vehicle to her home. Robert Rembert, Sr. asked the younger Rembert to bring the car to Voisin’s home because he was taking Voisin out to dinner and wanted to drop her off at her home later.
*687 Calloway contends that the trip to the Voisin home was a continuation of the delivery to Voisin from General and that storage overnight at the Rembert home was equivalent to the vehicle being kept at the General dealership. Calloway argues that the fact that Robert Rembert, Sr., and not Voisin, asked Rembert to return the Voisin car evidences that the car was in General’s custody.
We find these contentions have no merit. Delivery of the Voisin vehicle took place when she and the vehicle were both at the Rembert home; this took place at the latest when Robert Rembert, Sr. asked the younger Rembert to bring the car to Voi-sin’s home. We find that the fact that Robert Rembert, Sr. made the request of his son does not show that General retained control; Robert Rembert, Sr. as a father was asking a purely personal favor of his son. Because Rembert was returning the vehicle to the Voisin home purely as a personal favor to his father and Voisin, it was not a continuation of delivery from General. Finally, Calloway points out that General regularly delivered cars to its customers and cites the case of DeVille v. United States Fidelity and Guaranty Co., 258 So.2d 694 (La.App. 3d Cir.1972).[4] While the testimony was that General employees delivered cars to customers, we reiterate: the delivery of the Voisin vehicle from the Rembert home to the Voisin home was not part of General’s business services; rather, it was a purely personal favor. For this reason, this case is distinguishable from the DeVille case. For the above reasons, we find that there is no coverage under section (a) of the insurance policy.
For much the same reasons, we find that the trial judge erred in finding coverage under section (c). To obtain coverage under section (c), a covered automobile must be operated “for purposes of service or repair to that covered automobile with the permission of and for the sole benefit of the Named insured [General].” (Emphasis ours). The return of Voisin’s car to her home was at the least partially for her benefit so that she could go out with Robert Rembert, Sr.; furthermore, the cleaning and waxing of Voisin’s ear was done purely as a personal favor to her. Thus, Rembert’s return of the Voisin vehicle to her home was not for the sole benefit of General and is not covered under section (c).
For these reasons, the judgment of the trial court finding coverage under Insured Lloyds’ policy is reversed. Costs of this appeal to be paid by Calloway.
REVERSED.

. Calloway also named as defendants American Honda Motor Co. (American Honda), the manufacturer of the vehicle driven by Rembert; The Travelers Insurance Company (Travelers), the liability insurer of the Honda vehicle; Robert Rembert, Sr., the father of Rembert, a minor at the time of the accident and when suit was filed; Fireman's Fund Insurance Company (Fireman’s Fund), Robert Rembert, Sr.’s liability insurer; and Dairyland Insurance Company (Dairyland), Calloway's uninsured motorists carrier.
American Honda was dismissed from the suit on a motion for summary judgment; Travelers, Fireman’s Fund and Rembert, and Dairyland settled with Calloway and were subsequently dismissed from the suit.

. This insurance policy was admitted into evidence pursuant to a joint stipulation of the parties.
Although Robert Rembert, Sr. was under the impression that Rembert was listed under the policy as a Scheduled Driver, he was not.

. In his reasons for judgment, the trial judge initially looked at section (a) of the garage insurance endorsement. Because Rembert was sixteen at the time of the accident, the trial judge considered whether he was excluded from coverage under section (a) by the phrase "Employees of the Named Insured, including Contract employees, age 18 and over,....” The trial judge reasoned that the age restriction was ambiguous because it could apply to all "Employees" or only to “Contract employees." He construed the ambiguity against the insurer, finding that the age restriction only applied to contract employees, and thus did not preclude coverage on the sixteen year old Rembert.
We will not discuss the correctness of the trial judge’s finding that the age restriction was ambiguous, since a finding that the trial judge erred and that there was no coverage under section (a) because Rembert was under eighteen would not preclude coverage under section (c).
We also note that the trial judge only examined whether Rembert was covered under section (1) of the garage insurance amendment. Section (1) applies to “covered autos furnished for the regular use of the drivers listed in the Schedule of Drivers....” After examining the entire insurance policy, we believe that section (2) of the amendment might be more applicable to the Voisin vehicle since section (2) deals with “any automobile.” The application of section (2) does not affect our decision or discussion since a reading of section (2) shows that the same considerations are involved in determining whether there is coverage.

. The DeVille case involved the converse of the situation in the case at bar. In DeVille, the plaintiff was pursuing the liability insurance on a vehicle which was being driven from the insured owner’s office by an employee of a dealership which was to service the vehicle. The accident occurred en route from the insured's office to the dealership. The insured’s liability insurer denied coverage under the policy on the basis of an exclusion for owned automobiles being used by "any person while such person is employed or otherwise engaged in the automobile business [the business or occupation of selling, repairing, servicing, storing or parking automobiles],...." The trial court found the exclusionary clause applicable, based on evidence that the pick up and delivery of vehicles to be serviced was a routine and significant portion of the dealership’s business. The court then stated:
The conclusion is therefore inescapable that when the employee of Southern Chevrolet, whose only duties consist of picking up and delivering automobiles to be serviced is engaged in driving an automobile to his employer’s premises or from there to its owner’s premises, he is employed and engaged in the automobile business as such is defined in the policy.