FRUGÉ, Judge.
This is an action in tort for damages sustained in an automobile collision. The action was instituted by plaintiff, individually, and as administratrix of the estate of her minor daughter. From a jury verdict in favor of the plaintiff and her minor daughter, awarding general damages of $10,000 to each, defendants appeal. We affirm and reduce the award.
The collision in question occurred in the City of St. Martinville, Louisiana, on November 2, 1971, at the intersection of Bridge Street and Cemetery Street. Bridge Street is a main thoroughfare, running east and west, having the right-of-way over the intersecting Cemetery Street, which runs north and south. The intersection is controlled by a flashing yellow light for traffic on Bridge Street, and a flashing red light, together with a stop sign located on Cemetery Street.
Mrs. Annette Freeman, plaintiff, was operating a 1964 Plymouth four-door automobile in a northerly direction on Cemetery Street approaching the intersection of Cemetery and Bridge. Defendant driver, Paul C. Landry, an employee of Rex Truck Lines, Inc., was attempting to execute a left turn from Bridge Street onto Cemetery Street, while operating a large Mack truck together with a tandem trailer. The trailer involved was a large flat-bed trailer approximately 35 to 40 feet long, commonly known as an oilfield float.
While attempting to negotiate the turn, the defendant driver either turned prematurely or too sharply thereby causing the trailer portion of his vehicle to cross the center line of the intersecting street upon which plaintiff’s automobile was approaching. The front set of wheels of the trailer struck plaintiff’s vehicle on the left front forcefully. The automobile was propelled backwards some 25 feet from the point of impact coming to rest with its right rear wheel in the ditch.
The defendants contend that the jury erred in finding that Mr. Landry was guilty of negligence and that Mrs. Freeman was free from any contributory negligence. A careful examination of the record reveals ample testimony to support the conclusion of the jury.
Mrs. Freeman and her daughter testified that plaintiff had brought her vehicle to a stop in compliance with the stop sign on Cemetery Street. Both witnesses testified that after defendant passed with the tractor of his large vehicle, they were able to see the trailer portion of the vehicle would be unable to clear their own vehicle. At that time, they called out a warning to the defendant driver, who apparently was unable to hear them.
Mr. Roy J. Bonvillian, Chief Criminal Investigator for the St. Martin Parish Sheriff’s Department, who was the first person on the scene after the accident states that the rear wheels of the trailer were scarred and bruised, indicating that *857 they had struck the automobile. The investigating officer, Mr. Gustave Aucoin, III, City Policeman for the City of St. Martinville, found that the trailer of the truck operated by Mr. Landry was resting some four feet across the center line in Mrs. Freeman’s lane. Testimony indicates that neither vehicle had been moved after the collision. There is no manifest error in the jury’s finding of negligence on the part of Mr. Landry and the freedom from contributory negligence on the part of Mrs. Freeman based on the evidence adduced.
Apparently, the most serious allegation of defendant is that the award made by the jury to the plaintiff was excessive and should be reduced. Plaintiff answered the appeal praying for an increase in the award. The trier of fact is afforded “much discretion” in awarding damages in actions ex delicto. LSA-C.C. Art. 1934(3). The discretion granted the trier of facts under this rule cannot be disturbed in the absence of clear abuse. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company, 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971).
Plaintiffs contend they suffered serious and permanent injuries as a result of the accident. Mrs. Freeman suffered a laceration over the eye and was taken to a local hospital where the laceration was stitched and she was released. The next morning she sought the advice of Dr. Gerald Elias of New Iberia, her personal physican, who hospitalized her, finding evidence of muscle spasms indicating a soft tissue injury to the cervical column. This was further confirmed by Dr. Elias’s x-ray examination showing objective evidence of the injury in Mrs. Freeman’s neck. Dr. Elias felt that Mrs. Freeman’s complaints “were real and genuine complaints.” (Tr. 269).
After a period of four days, she was discharged with a cervical collar, which she was required to wear while awake, and prescriptions for a muscle relaxant together with analgesics and tranquilizers. Dr. Elias continued the regimen of drug treatment and last saw the patient on March 9, 1972, when he discharged the plaintiff. At his last examination of Mrs. Freeman, Dr. Elias found she had full range of motion in her neck and no evidence of muscle spasm. In his words, “From an objective standpoint, she was well.” (Tr. 293).
Mrs. Freeman also complains of injury to her lower back. Yet Dr. Elias states plaintiff never had complaints of her lower back. (Tr. 272).
Nanette Estillette, Mrs. Freeman’s minor daughter, was first treated by Dr. Elias on November 9, 1971. On physical examination of Miss Estillette, Dr. Elias found evidence of very mild muscle spasm in the cervical region; she had good range of motion and a neurological examination was normal. He prescribed a cervical collar for her. He last examined her on March 1, 1972 and March 16, 1972. At these examinations, Dr. Elias could find nothing objective to substantiate her complaints.
Mrs. Freeman and her daughter were examined by Dr. Blaise Salatich, orthopedic surgeon in New Orleans, Louisiana, on February 24, 1972. Dr. Salatich expressed his opinion that both plaintiffs were suffering from serious and permanent injuries to the cervical region. His findings were essentially the same in both cases. Dr. Joseph V. Hopkins, Jr., New Orleans, Louisiana, radiologist, examined the x-rays of both Mrs. Freeman and her daughter taken by him on February 24, 1972. Interpreting the x-rays of Miss Estillette, Dr. Hopkins found a flattening in the curvature of the cervical spine. This he described as “more than barely noticeable”, stating it was appreciable to him as a radiologist. (Tr. 73). Dr. Hopkins’s examination of x-rays of Mrs. Freeman revealed a flattening of lor-dotic curve describing the limitation as moderate or moderate plus (Tr. 83-84). Dr. Hopkins’s examination of x-rays of the lumbar spine indicated no pathology and nothing of significance. (Tr. 88-89).
*858 The patient’s relationship with Dr. Sala-tich was limited solely to examination. He did not prescribe any treatment for either nor did he retain them in his care. At no time was either plaintiff under any treatment other than medication and cervical collar. After they were released by Dr. Elias neither consulted a physician for these injuries for approximately one year. Immediately prior to trial, plaintiffs were examined again by Dr. Salatich, whose findings were the same.
Plaintiffs were also examined by Dr. Rufus Alldredge in New Orleans, Louisiana, orthopedic surgeon, at the request of defendants on January 24, 1973. Dr. All-dredge could find no objective evidence of injury to either plaintiff on physical examination and x-rays. He found no muscle spasm and no limitation of motion.
From the evidence presented in behalf of plaintiffs, we are of the opinion jury abused its “much discretion”. We find no evidence of a permanent injury to either plaintiff. The plaintiffs apparently suffered similar injuries consisting of a muscular strain of the cervical spine, namely a whiplash injury. The injury was apparently moderate in its severity. Plaintiff, Mrs. Freeman, was treated from November 3, 1971, to March 9, 1972. Miss Estillette was treated by Dr. Elias from November 9, 1971, to March 6, 1972, his last examination of her. After the plaintiffs were released, they consulted no physicians for approximately one year, until immediately prior to trial approximately one year later. We believe an award of $10,000 is excessive and that $5,000 each will adequately compensate the plaintiffs.
For the above and foregoing reasons, the verdict of the jury is affirmed in all respects except as to the award of general damages, and the same is hereby amended reducing the award of general damages in favor of plaintiffs to the sum of $5,000 each. Costs are to be paid by defendants-appellants.
Affirmed and amended.