SAMUEL, Judge.
This is an appeal from a judgment in favor of the plaintiff in a suit involving a rear end collision which occurred on August 27, 1968 on U.S. Highway 90 near Avondale, Louisiana. Plaintiff had stopped his pickup truck for a red light when it was struck from the rear by a truck owned by O. D. Pearson and driven by James E. Taylor, both named defendants.
There is no dispute as to the defendants’ liability.[1] In this court appellants make only two contentions: (1) the award of $6,500 for plaintiff’s personal injuries is excessive; and (2) the award of $9,221.60 for plaintiff’s loss of income as a result of the accident is erroneous and the claim for loss of income should be denied in its entirety because plaintiff failed to prove any such loss.
Regarding the award of $6,500 for physical pain and suffering, plaintiff was first treated by Dr. Vial, who referred him to Dr. Walter Brent, an orthopedic specialist. Dr. Brent testified he first saw the plaintiff on August 27, 1968, the date of the accident. There is some question as to the exact date of that initial examination for the reason that the plaintiff testified he saw Dr. Vial on August 27, 1968, but that he did not see Dr. Brent until the first Wednesday after that day, which was Dr. Brent’s regularly scheduled day for appointments in Luling, Louisiana.
In any event, when Dr. Brent first saw plaintiff, he found limited motion in the neck area with muscle spasms of the cervical spine. There were low back spasms with limited motion and complaints of pain in the left shoulder. The doctor prescribed *379 muscle relaxants and analgesics. He advised the plaintiff to refrain from working as a mechanic. By October 23, plaintiff had improved and only complained of mild pain in the low back, neck and shoulder. He was treated on a regular basis until February 19, 1969, after which he was seen three times by the doctor, the last examination being made on April 29, 1970. Dr. Brent testified that during the course of the treatment prior to February 19, 1969 there were some periods of increase in the plaintiff’s symptoms. The doctor’s final diagnosis was a torn attachment of the supra spinus muscle of the left shoulder, resulting in some traumatic arthritis and a 5% residual disability. There is some evidence showing plaintiff sustained some physical pain and suffering for a total of approximately 20 months.
In view of these facts and of the great discretion afforded to the trial judge in assessing these damages,[2] the award clearly is not excessive to the extent of requiring reduction by this court.[3]
The more difficult problem presented is the amount of the award to plaintiff for lost earnings. Plaintiff operated a combination service station and automobile repair business. The evidence offered shows some loss of income from the date of the accident on August 27, 1968 until the plaintiff’s medical discharge on April 29, 1970, resulting primarily from his inability to perform his duties as an oil station attendant and mechanic. In addition to his own testimony, he offered the testimony of several suppliers of automobile parts and materials in order to show lesser amounts of such parts and materials were ordered by him during the period from injury to discharge than had been ordered prior to and after that period. The trial court concluded that while this testimony by suppliers established some pattern, it was not sufficient by itself to do anything more than afford some corroboration to whatever specific proof plaintiff offered to show lost income.
Plaintiff relies heavily upon his federal income tax returns for the years 1967, 1968, 1969 and 1970. He testified he prepared the returns without assistance and, as we will later discuss in more detail, that Internal Revenue Service audits of three of the four returns produced results different from those originally shown thereon.
The trial judge arrived at his award for lost income solely from the plaintiff’s federal income tax returns and testimony regarding those returns in the following manner: Using round figures, first he obtained an average of the 1967 and 1970 incomes, respectively $6,458.69 and $7,994.97, representing the plaintiff’s income when he was not suffering from the injury in suit. Next, he obtained an average of the 1968 and 1969 incomes, respectively $32.13 and $3,174.27, the years during which the plaintiff was suffering from the injury. He then subtracted from the average normal income years the amount of the averaged income from the two years of the plaintiff’s disability. In so doing, he arrived at a figure of $5,623 per year. In order to determine lost wages for a period of 20 months, he divided $5,623 by 12 and obtained a monthly loss of $461.08, which he then multiplied by 20 months, thus arriving at the total of $9,221.60 as the award for lost income. We cannot allow this award to stand.
The four federal income tax returns in evidence show these amounts of income: 1967 — $1,158.69; 1968 — $32.13; 1969 — $3,-174.27; and 1970 — $7,994.97. The only evidence in the record to establish the plaintiff’s true income in 1967 is his own unsubstantiated testimony that the Internal Revenue Service added the sum of $5,300 to the income shown on his return to establish $6,458.69 as his income. Moreover, *380 the record shows that the plaintiff’s testimony regarding his 1967 income is at best suspect since he impliedly admitted at the trial that he failed to include in his income for that year at least a portion of fees obtained by him for performing repair work for a business known as Cars Wholesale.
Perhaps more important is the plaintiff’s admission under oath that an Internal Revenue Service audit of his 1968 return (which showed a profit of $32.13) resulted in an imposition of $796 more income tax and that an audit of his 1969 return (showing a profit of $3,174.27) resulted in an imposition of an additional federal income tax of $945. Plaintiff did not state whether the additional taxes imposed by the Internal Revenue Service included penalties, interest, or F.I.C.A. (self-employment) tax, for which no provision was made on the returns in evidence. Consequently, on the evidence in the record it is impossible for this court to compute the plaintiff’s true income for the years 1967, 1968 and 1969. It is clear that the figures shown on the returns introduced in evidence for those years are grossly inaccurate and cannot serve as the foundation for the computation of an award for lost income. Another consideration is the fact that plaintiff operated an additional business in 1970.
The burden is upon the plaintiff to establish the amount of lost income which resulted from the accident in suit. Because three of his four income tax returns, those for 1967, 1968 and 1969, were admittedly incorrect, with supplemental tax assessments made against him by the Internal Revenue Service, because proof of the results of these audits was readily available but not produced by him, and because he operated an additional business in 1970, the figures shown on the income tax returns for those years are unreliable to the point that they must be disregarded.
We are in agreement with the trial court’s conclusion that the evidence taken as a whole does support a finding that plaintiff sustained some loss of income as a result of his injuries. Keeping in mind that claims for loss of income need not be proved with mathematical certainty, but only by such proof as reasonably establishes the claim,[4] we are of the opinion that the evidence contained in the record does not justify an award for loss of earnings in excess of $2,000. Accordingly, we will reduce the award for loss of income to that sum.
For the reasons assigned, the judgment appealed from is amended so as to reduce the total award from the sum of $15,881.60 to the sum of $8,500. As thus amended, and in all other respects, the judgment appealed from is affirmed; costs in this court to be paid by the plaintiff-appellee.
Amended and affirmed.

. Defendants entered into a stipulation with Midstate Insurance Company, plaintiff’s collision insurer and subrogee, that in the event judgment was rendered for plaintiff there would also be judgment in favor of Midstate for $834.45, representing repairs to the plain- . tiff’s vehicle. Judgment was rendered as Stipulated but that award to Midstate is not involved in this appeal.

. LSA-C.C. Art. 1934(3) ; Gaspard v. Le-Maire, 245 La. 239, 158 So.2d 149, and subsequent cases.

. See, for example, the recent case of Freeman v. Hartford Accident & Indemnity Company, La.App., 282 So.2d 855.

. Fox v. State Farm Mutual Automobile Insurance Company and James C. Lewis, 288 So.2d 42 (handed down by the Supreme Court of Louisiana on December 3, 1973) (1973) and cases cited therein.