246 So.2d 16

**John MILLER, Individually and on Behalf of his minor daughter, Deborah Ann Miller**

**v.**

**Lionel J. THOMAS et al.**

**No. 50642.**

March 29, 1971.

287

288

------◆------

Joseph J. Laura, Jr., New Orleans, for plaintiff-appellee-applicant.

Stanley E. Loeb, New Orleans, for defendants-respondents.

Phelps, Dunbar, Marks, Claverie & Sims, Blake West, New Orleans, for defendants-appellees-respondents.

SANDERS, Justice.

We granted a writ in this damage suit to review the judgment of the Court of Appeal reducing the jury award for personal injuries by more than one-half. We reinstate the jury award.

During the afternoon of December 9, 1965, Deborah Ann Miller, plaintiff's seventeen-year-old daughter, was a guest passenger in an automobile driven by Anita Labry and owned by her father. While traveling south on the Airline Highway (U. S. Highway 61) near Kenner, the au-

tomobile collided with a large truck owned by Hoyt Manufacturing Company and operated by Lionel J. Thomas, its employee. At the time of the collision, the automobile was traveling in the inside lane next to the median and the truck was making a U-turn through an opening in the median. Miss Labry, the automobile driver, was killed instantly. Miss Miller and two other passengers in the automobile received injuries.

After a four-day trial, the jury returned a verdict in favor of plaintiff, John Miller, for injuries to his daughter, Deborah Ann, in the sum of $60,000.00 and for his past and future medical expenses in the sum of $4,000.00. The Court of Appeal reduced the award for the daughter's injuries from $60,000.00 to $25,000.00 and for medical expenses from $4,000.00 to $2,230.90 and, as amended, affirmed the judgment. 234 So.2d 67.

On application of plaintiff, we granted certiorari to review the judgment of the Court of Appeal. 256 La. 353, 236 So.2d 495.

We granted review because of plaintiff's serious allegation that the Court of Appeal had drastically reduced the award in violation of Louisiana Civil Code Article 1934 (3) and the principles announced in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169

So.2d 64 (1964); and Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).

Article 1934(3) of the Louisiana Civil Code provides:

"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury * * *"

As early as 1917, in Vincent v. Morgan's Louisiana & T. R. & S. S. Co., 140 La. 1027, 74 So. 541, a wrongful death action, this Court stated:

"Our further conclusion is that this case belongs to a class with reference to which the law declares in specific terms that 'in the assessment of damages * * * much discretion must be left to the judge or jury,' and hence that the assessment that has been herein made by the judge should not be disturbed by us unless we are satisfied that there has been an abuse of the discretion so vested in him, and, as we are not so satisfied, that it should remain undisturbed."

More recently in Gaspard v. LeMaire, Ballard v. National Indemnity Company of Omaha, Neb., and Lomenick v. Schoeffler, supra, this Court undertook to reemphasize the codal provision in a series of pronouncements designed to make clear to the intermediate courts of appeal the vitality of the codal approach to the review of damage awards.

In Lomenick v. Schoeffler, supra, this Court stated:

"We recognize that in cases of this type the Constitution makes it the duty of appellate courts to review both the law and the facts, but in their examination of the fact these courts must give effect to the basic law set out in Article 1934(3) of our Civil Code that in the assessment of damages in cases of offenses and quasi offenses 'much discretion must be left to the judge or jury'. This law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the lower court."

In Ballard v. National Indemnity Company of Omaha, Neb., supra, this Court elaborated:

"In the types of cases set out in Article 1934 the principle of law announced there becomes applicable only after the lower court finds liability on the part of the defendant and that plaintiff has proved by a preponderance of the evidence the nature and extent of his injury, for only then does it become necessary to assess the damages. On appeal, if the appellate court affirms the lower court and quantum is the issue, the court should then review all the facts and cir-

cumstances on which the lower court based the quantum of award, but this review is confined to determining whether there has been an abuse of the 'much discretion' vested in the trial court in assessing damages. After a review of all the facts and circumstances, if the appellate court finds that there has been an abuse of discretion, the amount of the award should be increased or decreased as the case warrants.

\*    \*    \*    \*    \*    \*

"In resolving the question of whether the jury in fixing the amount of the award in the Gaspard case had abused the discretion vested in it by law, we pointed out that '* * * In view of our codal provision, the appellate courts should consider the amount of awards in other cases only so far as they are relevant to the question of whether the judge or the jury has abused its discretion in fixing the award in the case under consideration.' However, an appellate court should not fix the amount of the award solely to maintain uniformity of awards, thus ignoring the prerogatives of the trial judge or jury in assessing awards in such cases as set forth in Art. 1934 of the Civil Code. The amounts of awards in so-called 'similar' cases are relevant only to determine whether there has been an abuse of discretion, but for no other purpose—that is, to determine whether the award is so excessive or so inade-

quate as to be an abuse of discretion. In this connection it must always be remembered, as said in Gaspard, that '* * cases relied upon may be similar in that each of them involves a similar injury such as a broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts and circumstances peculiar to the case under consideration.' "

From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the "much discretion" accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity.

Applying these principles to a personal injury award often presents real difficulty. The facts relating to the injuries must be collated in each case. Upon these facts, the Court must focus an informed judgment, tempered by a fair recognition of the discretion vested in the trial judge or jury.

In the present case, Miss Miller was hospitalized at Ochsner Foundation Hospital, where she was treated under the di-

rection of Dr. Alton Ochsner, Jr. He described her injuries as follows:

"A: Debra had multiple facial lacerations, cuts of the face and forehead. She had a soft tissue—that means no fracture of the bone; injury to the right shoulder and to the left forearm and right hip. She had no fractures of the face. She had a laceration across the forehead here which you can barely see the scar now. She had an extensive laceration that came from the front of the ears down to the corner of the mouth and the corner of the mouth was rather badly chewed up. She had another laceration that came right across the edge of the nose here up into the eyelid and extended down this way a little bit. I believe those were all of them.

\*    \*    \*    \*    \*    \*

"A: That's right it went up from the lip, across the nose, and up to the eyelid.

\*    \*    \*    \*    \*    \*

"A: The lacerations to her face were cleaned and sutured and then she was admitted to—well, this was done in the operating room and then she was kept in the hospital under observation for a few days.

\*    \*    \*    \*    \*    \*

"Q: How long did she stay in Ochsner Foundation Hospital?

"A: Debbie was discharged on December 12, and she'd been admitted on December 9."

The lacerations were cleaned and sutured under local anesthetic. Over one hundred sutures were required. Although some stitches were removed before Miss Miller left the hospital, others remained until December 15. A week later, Dr. Ochsner removed a piece of glass which had worked its way to the surface inside her mouth. Thereafter, Dr. Ochsner saw Miss Miller several times at his office, the last office visit being on July 20, 1966. To reduce the disfigurement from the scars, he then recommended plastic surgery.

Miss Miller first saw the plastic surgeon, Dr. Duncan McKee, on August 23, 1966. At that time, she had a curved scar extending from the corner of the mouth to the ear, an eight-centimeter scar on the forehead, a three-centimeter scar below the right eye, and a two-centimeter scar on the right side of the upper lip.

Dr. McKee planned a three-stage surgical procedure for plastic correction. At the time of the trial in April, 1968, he had performed the first stage. The scar adjacent to the lip widened after the surgery. Dr. McKee indicated that he might have to rework this scar. He testified that when he last saw Miss Miller on November 22, 1967,

the visibility of the scars had been reduced somewhat, with the scar around the mouth being the most prominent. Although he classified the scars as permanent,[1] he anticipated more improvement. He testified that a possibility existed that the surgical procedures would fail to improve the scars, and that the results would not be fully known for two years.

Dr. Ochsner testified that the facial scars would "stand out" more when Miss Miller became heated from exercise or sunburned.

The record supports a finding that Miss Miller sustained painful injuries in the accident, leaving her with permanent facial disfigurement. She must undergo future plastic surgery for the improvement of her appearance.

As shown by the photograph taken three months before the accident, she was an attractive young lady. She is unmarried and majoring in physical education at a New Orleans university. Her profession will require strenuous exercise, making the scars a greater liability.

The pain associated with the injuries, the facial scars, and the psychological effect of these scars are all factors to be considered in the award of damages.

Of the cases cited by the Court of Appeal for "comparison," only Knotts v. Employers Casualty Company, La.App., 177 So. 2d 630, involved a young, unmarried woman. In that case, for facial disfigurement, teeth injuries, pain and suffering, the court awarded general damages of $45,000.00. However, as observed in Gaspard v. LeMaire, supra, complete similarity between injuries is non-existent, and the award must be tested by "the facts and circumstances peculiar to the case under consideration."

█ The Jury in the present case had the advantage of seeing the disfigurement and appraising it in connection with the medical testimony. No photograph showing the facial scars at the time of the trial is in evidence. Our review of the record discloses no adequate reason to disturb the jury award. We find no abuse of discretion. Hence, we reinstate the judgment of the district court for general damages in the sum of $60,000.00.

Apparently through miscalculation, the Court of Appeal reduced the past and future medical expenses from $4,000.00 to $2,230.90. The record supports the following allowances:

| | |
|---|---|
| Past medical and surgical expenses | $1,228.45 |
| Future surgical | 500.00 |
| Second hospitalization for plastic surgery | 619.00 |
| Third hospitalization for plastic surgery | 619.00 |

---

1. "Q. Is it possible that these scars will be permanent to some degree?

"A. All scars are permanent."

Accordingly, we increase the award for medical expenses to $2,966.45.

For the reasons assigned, the Court of Appeal judgment is amended to increase the damage award from $25,000.00 to $60,-000.00, thereby reinstating the award of the district court, and the medical expenses award from $2,230.90 to $2,966.45 and, as amended, the judgment is affirmed. All costs are assessed against the defendants Lionel J. Thomas, Hoyt Manufacturing Corporation and Fireman's Fund Insurance Company.

McCALEB, C. J., dissents, being in accord with the views expressed by the Court of Appeal. (See Miller v. Thomas, 234 So. 2d 67.)