ON THE MERITS
The automobile accident which gives rise to this suit occurred on October 10, 1969 in the City of Abbeville, Parish of Vermilion, Louisiana.
Plaintiff Praverse Suire was driving the automobile of his father Elverse J. Suire, and his mother Ella Belle Moore Suire was a passenger in the right front seat. As they approached the intersection of Charity and Lyman Streets, they were struck by a vehicle being driven by defendant Elton Adams, who ran a red light. George Solomon was a passenger in the right front seat of the Adams vehicle.
Plaintiffs, claiming damages as a result of the accident, sued Elton Adams and his *185 employer Patin’s Tire Service, Inc. together with the employer’s liability insurer, Security Insurance Company of Hartford. Adams admitted liability, it being agreed that his negligent act of running the red light was the proximate cause of the accident. The jury, finding that Adams was within the course and scope of his employment with Patin’s Tire Service, Inc. at the time of the collision, cast all three defendants and awarded damages to Ella Belle Moore Suire in the amount of $25,000.00 and Praverse Suire in the amount of $1,-000.00 for their pain, suffering and disability and Elverse J. Suire the sum of $2,144.-00 for his wife’s medical expenses.
The issues are: 1) Was Elton Adams acting within the course and scope of his employment with Patin’s Tire Service, Inc. at the time of the collision, thereby causing the latter to be responsible to plaintiffs under the doctrine of respondeat superior; 2) Were the awards to Ella Belle Moore Suire and Praverse Suire excessive or inadequate ?
Elton Adams and George Solomon were employed by Patin’s Tire Service as laborers or tire repairmen. Adams had been in this employ for some four years and Solomon for some six months. They were paid on an hourly basis and normally arrived for work at approximately 7:00 in the morning and worked until their lunch period which was taken whenever their work permitted, although generally around noon. Their lunch period was one hour. Their work time was usually kept through the facilities of a time clock which the employees used to punch in and out. However, on the day of the accident, the time clock was inoperative requiring the employees to hand-write their in and out time. They were not compensated for their lunch period. On the day of the accident, Adams and Solomon reported to work shortly after 7:00 A.M. As was their custom, they provided their own transportation to and from work. Adams, driving his own vehicle had picked up Solomon and they drove to their employer’s place of business. Adams parked his vehicle on the company’s property to the rear of the main building at or near a large oak tree, in an area which was used for parking purposes by them and other employees. Although the time cards differ slightly from the testimony of Adams and Solomon, it appears that the two of them left work for their lunch break at approximately 12:20 P.M. At approximately 1:15 P.M. Adams picked Solomon up and returned to the employer’s place of business. As was customary, Adams parked his vehicle at or near the aforementioned oak tree on the company’s property. They alighted from the Adams vehicle and proceeded on foot toward the main building. As they were walking in their employer’s parking lot, Solomon slipped and fell to the ground, slashing his right forearm on a broken bottle or some other sharp object. The evidence indicates that Solomon was bleeding considerably from the laceration. Adams then went to a parked company truck and obtained a rag or piece of cloth from the truck, returned to Solomon and wrapped his arm in it. Adams and Solomon then returned to Adams’ automobile, got in, and left the premises, with Adams driving, to take Solomon to the hospital for treatment. It was on this trip to the hospital that the collision beween the Adams vehicle and the Suire vehicle occurred.
Defendants contend, under this set of facts, that Adams was not within the course and scope of his employment with Patin’s Tire Service, Inc. at the time of the accident. We disagree.
Our Civil Code Article 2320 is the source provision for the principle of law that an employer is liable for the negligent acts of his employee committed during the course and scope of his employment. Although Adams and Solomon had not yet signed in on the time card, they, nevertheless had returned to the company property and had parked in the designated parking area used by defendant’s employees. They were on the company property, walking to the main building only for the purpose of *186 continuing the work they were performing earlier in the day when Solomon slipped and injured himself. They were not in the process of returning to work during their lunch break. The lunch break was over and Adams and Solomon were on the job. Although the time card is an integral part of the employer’s method of keeping track of work hours, we do not believe that the fact that Adams and Solomon had not yet signed the time card should take them out of the category of a master-servant relationship at the time and under the circumstances indicated hereinabove when Solomon injured himself. Defendants suggest, nevertheless, that the two employees or either of them, should have notified defendant’s manager of the accident rather than taking it upon themselves to proceed to the hospital so that Solomon’s laceration could be attended to. Under the circumstances of this case, we are satisfied that Solomon’s laceration was of major proportions and could have become quite serious if medical attention was not given without much delay. The arm was seriously bleeding. A review of the testimony of Adams and Solomon leads us to believe they thought, inasmuch as they had not yet signed in, that they were not yet “on the job”. Such being the case, it is understandable that their first reaction was to get medical attention without going through the niceties and delays of making a formal report to the defendant in view of what appeared to them to be an emergency. Obviously they had cause for alarm as it was ultimately shown that Solomon’s laceration required 15 or more sutures. What Adams and Solomon thought as to their work status is of no legal consequence and any misconception on their part in this regard cannot change their legal status.
Defendants contend further that Adams, in taking control of the situation, was not exercising the functions for which he was employed when he proceeded to take Solomon to the hospital, and that the employer in this case had no duty to provide immediate medical assistance or care to the injured employee. We have not been referred to nor have we found any Louisiana cases on the subject of whether or not an employer has a duty to provide immediate medical assistance to an injured employee, but it seems to us that that obligation should attach under circumstances under which an employee is injured to an extent where he is in danger of losing his life or of experiencing further complications unless he receives medical attention. We think Solomon’s injury was such that it was incumbent upon the employer to provide immediate medical assistance. Although Solomon was apparently not in danger of losing his life, he, nevertheless, had been inflicted with a manifestly serious laceration which would appear, particularly to the average layman, to be most grave and of an emergency nature, requiring immediate medical attention. It is inconceivable to us that had Solomon’s accident been reported to the defendant’s manager, that he would not have immediately sent him to a hospital or doctor’s office for medical and/or surgical repair.
In determining whether or not the actions of the employee are within the course and scope of his employment, the guiding criteria is whether or not the acts committed by the employee were in the furtherance of his employer’s business. In addition, even though the acts are not specifically authorized, they may be covered, as indicated in Vol. 57 C.J.S. Master and Servant § 570 page 303, as follows:
“It is clear that conduct which the master has specifically directed is within the scope of the servant’s employment, but it is not essential that the conduct be specially authorized by the master. It is enough that it is impliedly directed or authorized by the master, or is of the same general nature as that authorized, or is incidental to the conduct authorized.” (Emphasis ours.)
*187 And further on pages 308 and 309 is found the following:
“The mere fact that an act, which is otherwise within a servant’s scope of employment, is performed at a time before the servant ordinarily goes to work will not exonerate the master of liability therefor.”
And further, in Vol. 56, C.J.S. Master and Servant § 162, page 815, it is provided :
“It is the duty of the employer, however, to provide medical or surgical assistance in the case of an emergency where it is imperatively demanded to save life or to prevent further serious bodily injury.”
In view of the foregoing discussion we conclude that Elton Adams was in the course and scope of his employment with Patin’s Tire Service, Inc. when he was involved in the accident with the Suire vehicle as he was transporting George Solomon to the hospital. Consequently defendant company and its liability insurer are responsible to plaintiffs in damages under the doctrine of respondeat superior.
We turn next to the question of quantum. Mrs. Suire, as a result of the accident, received numerous contusions and abrasions about her face, a large “S” shaped laceration of the right knee, fracture of the sixth and seventh left ribs, dislocation of the left shoulder with a non-displaced fracture of the Glenoid Process and compound fracture of the right Patella or knee cap. Mrs. Suire’s injuries required surgical procedure to the right Patella and a full body cast for approximately three weeks. She remained in the hospital for 18 days and was required to receive injections of morphine for pain every three to four hours throughout the day for the full 18 days in the hospital. Her left arm remained bandaged to her body for approximately eight weeks. She was required to remain in bed for over 10 weeks and was unable to leave the bed without assistance. In addition she was on crutches for approximately 10 months after the accident. As of the date of the trial, which was 11 months after the accident, she still was unable to do housework and was receiving injections every month for her knee and leg. She suffered a 15 to 20 per cent permanent disability of her right knee and leg and a permanent decrease in function of her left shoulder of approximately 20 to 22 per cent.
Her medical expenses amounted to the sum of $2,144.00. For these injuries, the jury awarded Mrs. Suire the sum of $25,-000.00.
Mr. Praverse Suire, Mrs. Suire’s son, received a contusion to the left temporal area of the scalp, a low back strain and a contusion of the left kidney. He was hospitalized for a period of four days. Upon examination, blood was discovered in the urine. He was given medication for the kidney problem, muscle relaxants, injections and was required to sleep on a wooden plank. He testified of extreme pain during the first few days after the accident and was still experiencing minimal pain up to the date of trial. The jury awarded him the sum of $1,000.00.
Our jurisprudence is clear to the effect that in order for an appellate court to modify an award of general damages, they must find that the trial judge or jury abused the “much discretion” accorded by Louisiana Civil Code Article 1934, Sec. 3. Gaspard v. Lemaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Miller v. Thomas, (1971), 258 La. 285, 246 So.2d 16. We find no manifest error on the part of the jury in making these awards.
Accordingly the judgment of the trial court is affirmed. Costs in both courts to be assessed against defendants-appellants.
Affirmed.