301 So.2d 413 (1974)
Cheryl Norton, wife of/and Spiros Nick GIANAKIS
v.
Lorenzane MAYEN and Government Employees Insurance Company.
No. 6356.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1974.
*414 Peter J. Abadie, Jr., New Orleans, for plaintiffs-appellees.
Hammett, Leake & Hammett, Craig R. Nelson, New Orleans, for defendants-appellants.
Before REDMANN, GULOTTA and MORIAL, JJ.
MORIAL, Judge.
Defendant, Government Employees Insurance Company (GEICO), appeals suspensively from a judgment of the District Court awarding plaintiffs $6,000.00 in general damages plus special damages of $668.93 under the uninsured motor vehicle coverage of their policy. We affirm.
On December 16, 1969, Mr. & Mrs. Spiros Nick Gianakis were traveling toward Lake Pontchartrain on Elysian Fields Avenue. Mrs. Gianakis was driving in the center lane and stopped for the red light at the intersection of North Robertson and Elysian Fields. While stopped for the red light the Gianakis vehicle was struck from the rear by a car driven by Marina E. Mayen and owned by her mother. Plaintiffs were informed that there was no liability coverage on the Mayen vehicle.
GEICO contends that it should not be cast in judgment since there was no evidence adduced to show that its policy of insurance provided uninsured motor vehicle coverage. In its answer and third party petition GEICO admits a policy of insurance which names the Gianakis vehicle. Our law requires the inclusion of uninsured motor vehicle coverage in every policy delivered or written in Louisiana unless the insured specifically rejected such coverage. LSA-R.S. 22:1406 Subpara. D(1)(a). This record contains no evidence of a rejection of such coverage by the plaintiffs.
Defendant further contends that neither Mr. or Mrs. Gianakis have supporting evidence for their long lasting complaints of pain and that their injuries were severely exaggerated. GEICO argues that the award to each plaintiff for personal injuries should be reduced.
Did the trial judge abuse his discretion in awarding $4,500.00 to Mr. Gianakis and $1,500.00 to Mrs. Gianakis for their respective personal injuries?
To properly review quantum an examination of the medical testimony and medical reports are required.
Mrs. Gianakis saw her family doctor on the day of the accident. He referred her to Dr. W. Hammond Newman an orthopedic surgeon. While Dr. Newman did not testify his report was stipulated to by counsels. It stated that Mrs. Gianakis was treated from December 16, 1969 until March 10, 1970 when she was discharged. The report states that on the first examination at the time of the accident the patient complained of cervical pain generally around the neck. On examination he noticed that all motions of the cervical vertebrae, that is, forward flexion, hyperextension, lateral bending and lateral rotation, were limited by one-half. The biceps, triceps, and brachiorradials reflexes were equal, active, and symmetrical. He diagnosed her injury as a tear of the ligament of the cervical vertebrae. Dr. Newman's *415 treatment consisted of conservative therapy which was followed up by an examination on December 26, 1969 at which time the patient still exhibited slight stiffness of the cervical area and was then placed on exercises. She was seen again in February of 1970 at which time she complained of pain in the neck. Dr. Newman noted in his report that Mrs. Gianakis' neck was stiff on February 16, 1970. At this time the biceps, triceps, and brachiorradialis reflexes were equal and active. An X-ray examination showed some flattening of the 4th and 5th cervical vertebrae but no fracture or dislocation. The patient was seen by Dr. Newman again on the 24th of February at which time a muscle relaxant was prescribed. She was last seen by him on March 10, 1970 and discharged. Dr. Newman was of the opinion that there would be no permanent injury but that she had been incapacitated between December 16, 1969 and March 10, 1970.
Mrs. Gianakis was seen by Dr. Carey on April 8, 1970. At that time she stated that as a result of the treatment program that she was without discomfort and functioned normally except on sleeping and odd positions when she experienced a pulling sensation of the posterior of her neck. It was Dr. Carey's opinion that the patient revealed no objective evidence of orthopedic pathology in the posterior neck, shoulders, or upper extremities. He further felt that the patient would have no residual disability as a result of her injury.
Mrs. Gianakis testified that she lost several days of work, two or three. She took off from work to visit her doctors. She further testified that she had to do home exercises which were recommended for treatment and that she went to the doctor every week for six weeks straight and was discharged several months after the accident. It was also her testimony that after discharge she was without symptoms from the accident.
Mr. Gianakis saw his family physician, Dr. Fontenelle, on the day following the accident. Dr. Fontenelle referred him to Dr. Newman, whom he saw within a couple of days after the accident. Dr. Newman, according to Mr. Gianakis' testimony, prescribed muscle relaxants and treated him in the office via neck exercises. He saw Dr. Newman once a week for a period of a month.
He was seen by a Dr. Brent for the first time on December 3, 1970, complaining of pain in his neck and left shoulder. Dr. Brent gave him diathermy treatments in the office. He prescribed muscle relaxants and surgical traction with ten pounds of weight which Mr. Gianakis used for 15 minutes each day for four months.
Dr. Brent testified that examination of Mr. Gianakis showed pain was present on complete flexion and complete left rotation with the patient pointing out the left trapezius muscle (a heavy group of muscles on the side of the neck) as the point of pain. Dr. Brent further testified that he reviewed X-rays taken after the accident of the patient. In his opinion the X-rays showed flattening of the cervical lordotic curve which was probably due to muscle spasm which were present at the time the X-rays were taken. In his opinion Mr. Gianakis had suffered an acute cervical sprain. Dr. Brent prescribed muscle relaxants and some Tandearil (an anti-inflammatory drug) for the tissue reaction to subside. He administered diathermy in the office.
Mr. Gianakis saw Dr. Brent on the 28th, 29th, 30th of December 1970, January 3 and 28, 1971. Since the plaintiff was having trouble getting to the office from work Dr. Brent suggested the traction rig for home use. When Dr. Brent saw Mr. Gianakis in March 1971, he was still having slight discomfort but feeling better. He was using the traction at home. On April 16, 1971, Dr. Brent observed marked improvement with some slight residual discomfort and told the patient to continue with the traction at that time. He was seen again by Dr. Brent on September 24, *416 1971 and September 30, 1971 due to a recurrence of the pain and discomfort, at which time he was placed on medication. Mr. Gianakis was seen by Dr. Brent again on October 22, 1971 and December 10, 1971. He complained of tenderness to the side of his neck.
In Dr. Newman's stipulated report concerning Mr. Gianakis it is stated that since the time of the accident that Mr. Gianakis has some pain in the left side of his neck. Dr. Newman noted that there was a full range of forward flexion, hyperextension, and lateral bending and lateral rotation of the cervical vertebrae. Cervical vertebrae X-rays taken later showed no fracture or dislocation. It was Dr. Newman's diagnosis at that time that there was a tear of the ligaments in the cervical vertebrae and that no permanent injury would result. The patient was seen by him on December 16, 1969 and was again seen by him on February 24, 1970.
Article 1934(3) of the Louisiana Civil Code provides:
"In the assessment of damages under this rule, as well as in the case of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury. * * *"
In Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); and Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), the Supreme Court makes the vitality of the above codal provision abundantly clear in relation to appellate review of damage awards.
For us to modify an award for general damages we are compelled to adhere to the principles enunciated in Miller v. Thomas, supra, 246 So.2d at page 19:
"From these decisions, [Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); and Vincent v. Morgan's Louisiana & T. R. & S. S. Co., 140 La. 1027, 74 So. 541 (1917)] two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the `much discretion' accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity."
We might well disagree with the amount of the award fixed by the trial judge, but it is impermissible for us to substitute our opinion for the trier of facts. We are limited to determining whether the trial court abused its discretion. Spillers v. Montgomery Ward & Co., Inc., 294 So.2d 803 (La.1974).
The adequacy or inadequacy of an award should be determined by the facts and circumstances peculiar to the case under consideration. Also, an award for pain and suffering is imprecise and is not subject to irrefutable mathematical rules. Boutte v. Hargrove, 290 So.2d 319 (La.1974).
From our review of the record and the application of the principles stated in Miller v. Thomas, supra, the evidence reasonably supports the awards of general damages by the trial judge. Further, we have considered the cases cited by defendant to support its contention that the awards were excessive and conclude that the trial judge did not abuse or exceed his discretion.
The judgment of the district court is affirmed.
Affirmed.