MORIAL, Judge.
Defendants appeal a decision of the district court awarding $12,000.00 in damages plus medical expenses to plaintiff for injuries sustained by his minor daughter when defendant’s vehicle driven by his son struck plaintiff’s daughter causing a broken femur of her left leg and a fracture of her right ring finger.[1] We affirm.
At or about 8:30 A.M., on November 8, 1971 Susan Moore, the five year old daughter of plaintiff, was walking to school with her sister and a cousin. She proceeded to cross General Ogden Street in the middle of the block in a posted school zone. Approximately half-way in the middle of the street the child was struck by defendant’s vehicle being driven *718 by his son, Rickey Mouledous, who was 15 years of age at the time of the accident. In the car with Rickey was his 13 year old brother and his ten year old sister.
Immediately after the accident Susan Moore was brought to Charity Hospital where she remained in traction for one month. Thereafter, both legs were placed in cast for a period of five weeks. The cast covered the left leg from her waist to her left ankle and the right leg from her waist to right knee. The cast, which covered both legs above the knees, was joined by a steel rod. This prevented any attempted mobility until the cast was removed.
Defendants contend (1) the district court erred in finding that defendant’s son was speeding at the time of the accident and negligent in failing to slow down or apply his brakes when he first saw plaintiff’s cousin and sister dart across his path; and (2) the district court abused its “much discretion” in awarding $12,000.00 for damages for the injuries sustained.
Plaintiff argues (1) that Rickey Moule-dous was speeding through a posted school zone at the time of the accident and was therefore negligent, which negligence was the proximate cause of the accident; and (2) that his daughter will have permanent residual shortening of her leg from the injury and, therefore, an award of $12,000.00 is not excessive.
It is Rickey’s version that he was proceeding down General Ogden Street toward Airline Highway enroute to school on the morning of the accident. He testified that he was familiar with the school zone and had traveled that route to school before. He stated that he saw children in the area and was proceeding around 20 mph for several blocks preceding the school zone.[2] As he passed through this school zone, he saw two little girls run out from behind a parked panel truck facing in his direction on the right side when he was about two car lengths behind it. At this point he slowed his vehicle to 10 to 15 mph by applying the brakes lightly and then lifted his foot from the brake pedal and proceeded on. Approximately one half car length from the end of the truck, plaintiff’s daughter suddenly darted out into his path from the same area where the other two little girls had come from and he struck her. He testified that he had no time whatsoever to avoid striking her or to stop. He hit his brakes and they grabbed approximately three feet ahead of her before striking her and sliding. Scott Mou-ledous, who was seated alongside Rickey and Robyn Mouledous, who was seated in the rear seat both testified. The testimony of neither is of any assistance in a resolution of this dispute.
Plaintiff produced an independent witness, Mr. Irvin Hebert, a driver of a White Fleet cab. He was parked at the corner of General Ogden and Marks Street allowing a passenger to disembark. Mr. Hebert testified that he saw the defendant’s car go past him around 30 or 35 mph and immediately thereafter he witnessed the car skidding into the child.
Plaintiff also presented the testimony of Kelsey Hollowell and his wife Florell Hol-lowell who lived very close to the scene of the accident and comforted the injured child. They did not witness the accident, but testified the car left skid marks which they measured with a ruler to be 40 feet. The police did not measure the skid marks. Forty feet of skid marks would indicate that the speed of the car was 30 mph.[3]
Richey Mouledous’ own testimony makes him negligent. Though a driver is not the insurer of the safety of children, the jurisprudence is clear and plain that a driver of a vehicle must exercise the highest degree of care in the presence of children to avoid injury. The playful, excited *719 conduct of children walking, running and crossing streets in a posted school zone well known to a driver does not relieve the driver of the duty to exercise the required degree of care commensurate with the circumstances but, conversely, serves as additional notice to the driver that the highest degree of care is to be exercised. When Rickey Mouledous observed the presence of children in his path of travel, or in a position where they could become imperiled, he was placed on notice and an extraordinarily high degree of care was imposed on him. Under such circumstances as here, a motorist is charged with knowledge that children may unexpectedly or unpredictably leave a position of safety for one of danger and peril. Rickey Mouledous failed to exercise the degree of care required of him.
The district court properly concluded that the circumstances and Susan Moore’s tender age of five years avoided the issue of contributory negligence and the negligence of defendant’s son was the sole and proximate cause of the accident.
Defendant’s orthopedic surgeon Dr. George Cary testified as to the injuries. Dr. Cary first saw Susan Moore on March 2, 1972 when his physical examination revealed a 60 pound female ambulating with a slight limp affecting the lower left extremity. He found no atrophy or wasting of the musclature. There was a full range of motion of hip and knee. There 'was a one quarter inch shortness on the left side.
On examination of Susan’s hand, Dr. Cary noted that there was injury to the growth center of the middle bone and the right ring finger with a fusion apparently having taken place in one section of the growth center. It was his testimony that this may cause her some angulatory deformity of that finger in the future which would necessitate surgery for its correction.
Dr. Cary again saw Susan Moore on February 15, 1973 and at that time she appeared to have no limp and no neurological deficit could Ibe found. Dr. Cary testified however that there was still a one quarter inch shortness on the left side of the body from the healing of the fracture to the left femur. He indicated that most of the repair and overgrowth of the bone should have accounted for more than the one quarter inch deficit by that time. It was his opinion that since the healing process should work better soon after the accident, it was possible that this one quarter inch deficit to the left side might not be made up in the future. This would leave Susan Moore with a permanent one quarter shortness of the left leg due to the injury to the femur. He testified however that no damage was done to the growth centers of the bone in the leg.
We find no support in the cases cited by the defendants to support their argument that the trial judge’s award of $12,000.00 was a clear abuse of discretion. In Miller v. Thomas, 258 La. 285, 246 So.2d 16, 19 (1971) our Supreme Court stated the rule of appellate review of quantum of damages as follows:
“From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the ‘much discretion’ accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity.”
Applying the quoted principles, we are unable to hold that the trial judge abused his “much discretion” in making the award presented for review. An award of $12,000.00 for the injuries plaintiff’s daughter sustained is not excessive.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.

. Charity Hospital records on admission do not reflect a fractured finger; however, Dr. Cary testified that in his opinion the finger was fractured at the time of the accident.

. At the time of the accident the posted school zone speed limit was 15 mph.

. See Vol. 9C, Blashfield’s Cyclopedia of Automobile Taw and Practice, Part 26 Section 6237, p. 413.