307 So.2d 773 (1975)
Kenneth M. ALLEN, Plaintiff-Appellee,
v.
RILEY MOBILE HOME SALES, INC., and Liberty Mutual Insurance Company, Defendants-Appellants.
No. 4865.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1975.
*774 Bolen & Halcomb by Gregory S. Erwin, Alexandria, for defendants-appellants.
Henry W. Berthard, III, Coushatta, for third party defendants-appellees.
Whitehead & McCoy by Charles R. Whitehead, Jr., Gerard F. Thomas, Jr., Natchitoches, for plaintiff-appellee.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
FRUGE, Judge.
Plaintiff, Kenneth Allen, brought this action against defendants, Riley Mobile Home Sales of Louisiana, Inc. and its liability insurer, Liberty Mutual Insurance Company, for injuries sustained by the plaintiff in November of 1972, when the central heating unit in his wife's mobile home exploded. A third party demand was made against Pargas of Natchitoches, Inc. and its insurer, American Motorists Insurance Company by defendants Riley and Liberty Mutual. After trial on the merits, judgment was rendered in favor of the plaintiff on the main demand and in favor of the third party defendant on the third party demand. Defendants Riley and Liberty Mutual have appealed from that judgment. We affirm in part and reverse and render in part.
In February, 1972, Mrs. Kenneth Allen, then Miss Janet Ainsworth, contracted with Riley to purchase a mobile home. In connection with the sale, the representative of Riley asked Miss Ainsworth what type of fuel would be used in the gas fixtures located in the mobile home. The reply was that butane and not natural gas would be used as the fuel for the appliances. This decision was indicated on a "check out sheet" prepared by the representative. The purpose of this sheet was to inform service men and inspectors, and employees of Riley of exactly what had to be done to prepare the mobile home for delivery to the purchaser. Specifically it indicated that the orifice on the heating unit in the mobile home would have to be changed from a natural gas orifice to one designed for the burning of butane.
Following the sale of the mobile home to the plaintiff's wife by Riley, a representative of Pargas came to the location of the home for the purpose of connecting up a butane system to the mobile home.
On the night prior to the accident plaintiff and his wife returned to the mobile home to find that the heating unit was off. Plaintiff turned the unit off and waited *775 until the next morning to try to relight it. The next morning the plaintiff attempted to relight the furnace following the lighting instructions supplied with the heating unit. Plaintiff suspected that something might be wrong when the blower in the furnace did not turn on. He immediately turned the pilot light off and decided to wait to relight the furnace. After waiting several minutes he repeated the process but again the blower did not come on. He then began to smell butane gas escaping and heard a spewing sound inside the furnace. He again decided to turn off the unit. At the same time he opened the door of the gas chamber in order to release the apparent build-up of pressure inside. When plaintiff opened this door the escaping gas caused a flame-out which caused the injuries sued on by the plaintiff.
Defendants Riley and Liberty Mutual have asserted several errors on the part of the trial judge. Before discussing these alleged errors, we will briefly discuss the trial judge's written reasons for judgment.
The trial court found that as a matter of fact, Pargas had no duty whatsoever to change the orifice in the heating unit. It was found that the plaintiff's wife had purchased the mobile home from Riley and specifically requested that the appliances in the home contain orifices for the use of butane rather than natural gas. The court accepted the testimony of one H. C. Cooper who checked the heater after the explosion and removed the natural gas orifice and installed a butane orifice. The court rejected the testimony of the employee of Riley indicating that a butane orifice had in fact been installed. This testimony was rejected because the employee could not remember the specific mobile home and testified only that he thought the proper orifice had been installed because a check list indicated that this work had been done. The court also found that Hezikiah Reed, the Pargas employee who connected the butane system to the mobile home, told the plaintiff's wife and mother-in-law that he had connected the gas to the kitchen stove which had the correct orifice but had not connected it to the heater. This information was apparently not relayed to the plaintiff himself. Mr. Reed testified that he did not actually look into the interior of the heater to inspect the orifice but observed the butane orifice attached to the exterior of the heating unit in a small seethrough package.
The court found that Riley in failing to install a proper orifice and in leading the plaintiff's wife into believing that the proper orifice had in fact been installed when it had not, had breached its duty of care and was therefore liable to the plaintiff for the damages sustained by him.
The court found that the witnesses testifying in the trial with regard to the use of butane in a natural gas orifice heater all agreed that the improper mixture of air and gas would cause excessive sooting. Although there was disagreement among the expert witnesses as to whether or not the heater ventilation pipe would become clogged by the excessive soot, the court was persuaded by Mr. Cooper that the sooted ventilation pipe became so restricted that the air flow to the flame in the heater became restricted to the point that the flame was snuffed out. There was sufficient air remaining to keep the small flame at the pilot light burning. The automatic cut-off valve on the heater which is activated by a thermocouple and which takes about 30 seconds to one minute to cool off allowed a sufficient amount of gas to accumulate in the heater so that when the plaintiff opened the small door to relieve the pressure which he thought might be building up in the heater from the escaping gas, the gas in the heater mixed with this air introduced by the opening of the door and an explosion took place when this mixture was ignited by the small flame of the pilot light.
The trial judge indicated in his written reasons for judgment that there was no doubt as to the injuries suffered by the plaintiff. Dr. Joseph Thomas testified that *776 he first saw the plaintiff on January 5, 1973, and found acute myoligamentous strain of the muscles in the neck. The plaintiff also complained of headaches. On subsequent examinations he found muscle spasms indicating continued strain. Dr. Thomas had the plaintiff examined by Dr. Frederick C. Boykin, a neurosurgeon, on two occasions. The plaintiff was also examined by Dr. Reginald Wheat for possible eye injury.
The court awarded the plaintiff $4,000 for his pain and suffering. There was some conflict in the evidence with reference to the number of days of work missed by the plaintiff but the court relied on the payroll records and found that six days of missed work was accurate and gave plaintiff recovery in the amount of $184.80 for those six days of work which he missed. Although the trailer belonged to the plaintiff's wife, who had purchased it prior to their marriage, the $18.03 expense incurred for the service call by Mr. Cooper on November 27, 1972, was found to be a debt of the community and one which the plaintiff was obligated to pay. Other special damages included recovery for the doctors' bills incurred by the plaintiff in the total sum of $110.00.
Defendants in this case have alleged several errors on the part of the trial judge, the first of which is that the lower court erred in finding that the plaintiff carried his burden of proving that Riley was negligent and that this negligence was the sole, proximate cause of the accident and the plaintiff's injuries. It is argued that the plaintiff is required to prove both that the furnace was in fact equipped with the wrong orifice and that the presence of this orifice was the cause of the flame-out. The record indicates some conflict in the testimony of the various witnesses with respect to the possibility that the presence of a natural gas orifice could have resulted in the flame-out which occurred. The trial judge chose to believe the testimony of Mr. Cooper, whose theory has been related above. The trial judge heard the testimony and, after evaluating it, determined that the theory of Mr. Cooper was the most plausible one explaining how the accident occurred. He was in the best position to evaluate all the testimony and we find no error on his part in evaluating the testimony as he did. Furthermore, the testimony of Mr. Cooper is to the effect that he removed the natural gas orifice from the heater after the accident occurred and replaced it with a butane orifice. This refutes the defendants' contention that the plaintiff failed to prove that the wrong orifice was on the heater. The judge found that there was sufficient evidence in the record to prove the allegations of the plaintiff, and our review of the record indicates that he was correct on this point.
The defendants allege error on the part of the trial court in failing to find that the defendants proved negligence on the part of the third party defendant, Pargas. The defendants argue that when Mr. Reed, the Pargas representative, came to connect the butane gas tank to the mobile home gas system, he should have simply replaced the natural gas orifice with the proper one, and that his failure to do so was the proximate cause of the injury to the plaintiff. The testimony of Mr. Reed indicates that he simply told the plaintiff's wife and mother-in-law of his feeling with regard to the improper orifice, that the proper orifice was not on the heating unit and that in order to use the heating unit the proper orifice must be installed. The testimony of the plaintiff's wife was that Mr. Reed said absolutely nothing about the suspected orifice problem. Defendants argue that no matter whose testimony is believed, the representative of Pargas was under a duty not to connect the butane tank to the mobile home gas system without first making sure that all appliances were properly fitted for butane gas use. The defendants argue that the Liquified Petroleum Gas Commission rules and regulations *777 place a duty upon Pargas to serve only a properly installed gas system.[1]
We find merit in this argument. Mr. Reed, the Pargas employee who connected the butane tank and lines to the mobile home, testified that when he checked out the system he saw a kit containing a liquified petroleum gas orifice taped to the heating unit, from which he assumed that the natural gas orifice was the one which was in the heating unit. He was aware of the fact that the heating unit was not designed for operation with butane while equipped with a natural gas orifice, yet he connected the butane tank to the home's appliances. Under the cited regulation of the Liquified Petroleum Gas Commission, it is clear that once Mr. Reed found that the wrong orifice was in the heating unit he was under a duty not to serve the system. He breached this duty, and this breach contributed to the plaintiff's injuries. Since Pargas is liable for the negligence of its employee, we find solidary liability on the part of Pargas, its liability insurer, and the appellants for the injuries sustained by the plaintiff.
Defendants allege that the trial judge erred in not finding the plaintiff guilty of contributory negligence. Defendants state that the test of contributory negligence in the instant case is whether the plaintiff could reasonably conclude that he could safely open the furnace door while attempting to turn the furnace off. The testimony indicates that the plaintiff followed the proper lighting procedure in attempting to relight the furnace the day of the accident. There is nothing in the record which indicates that he was aware or that he should have been aware of the possibility of a flame-out occurring when he opened the furnace door. The trial judge found no contributory negligence on the part of the plaintiff, and we find that the record adequately supports his holding.
Defendants next allege that the trial judge erred in awarding the plaintiff an amount manifestly excessive on the basis of the evidence produced in court. They argued that the award to the plaintiff of $4,000 for his alleged pain and suffering is grossly disproportionate to the evidence produced by the plaintiff in support of his recovery.
Civil Code Article 1934(3) provides that much discretion is allowed the trier of fact in determining the amount of damages to which the party is entitled. Since the trial court has a closer contact with the injured party, it is better able to estimate his actual loss. See Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971). In affirming the trial judge's determination on this point we note the language of the Supreme Court in Canter v. Koehring Company, 283 So.2d 716 (La.1973), as follows:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." 283 So.2d at 724.
*778 Defendants next allege error on the part of the trial court in overruling the defendant's exceptions of no cause of action and no right of action. The defendants' position is based upon the contention that the plaintiff cannot recover for negligent representation or breach of warranty of suitability when he did not prove that he relied on the representation by the defendants and when the warranty of suitability did not run to the plaintiff. The trial judge gave no written reasons for his denial of the exceptions made by the defendants. Our review of the pleadings in this case indicate that the plaintiff's complaint sets forth both a cause of action and a right of action against the defendants herein which, upon the proper presentation of proof, should allow recovery. Therefore we find no error on the part of the trial judge in denying the exceptions made by the defendants.
The defendants allege error on the part of the trial judge in not compelling the plaintiff to answer all the defendants' discovery interrogatories. A series of interrogatories was served upon the plaintiff by the defendants which were objected to by plaintiff as oppressive, harrassing, and not relevant or material to the matters which were the subject of the suit. The trial judge ruled that the plaintiff need not answer certain of the interrogatories posed by the defendants. The defendants contend that this ruling deprived them of relevant information which severely handicapped their trial preparation and which was prejudicial to their case. We note the broad discretion granted to the trial judge in discovery matters. In Alford v. Kaiser Aluminum and Chemical Corporation, 229 So.2d 372 (La.App. 4th Cir. 1969), writs refused, 255 La. 478, 231 So.2d 394, the court stated:
"The trial judge has very broad discretion in limiting the scope of interrogatories which are propounded and to make such orders to protect the parties to whom interrogatories are propounded from annoyance, embarrassment, oppression or undue expense." 229 So.2d at 374.
In Bianchi v. Pattison Pontiac Company, 258 So.2d 388 (La.App. 4th Cir. 1972), the court stated:
"While we agree that liberality of pretrial discovery should be encouraged, it must not be fostered without regard to the right of the party against whom it is invoked to be protected from harrassment and financial loss.
"Whenever it is urged that the unrestricted use of the discovery process may result in undue hardship, loss or damage monetary or otherwisethe trial judge should resolve all reasonable doubts in favor of the party against whom it is invoked and liberally apply the protective devices authorized by LSA-C.C.P. art. 1452. And, if in his opinion these safeguards are inadequate, he has the discretion to improvise by prescribing such reasonable restrictions as would accomplish the intent of this article." 258 So. 2d at 390.
We find that the broad discretion granted to the trial court in discovery matters had not been violated in the present case.
Next, the defendants allege error on the part of the trial court in denying the motion for continuance by the defendants. The defendants assert that there was inadequate time to prepare a defense. Defendants were notified on March 11, 1974, that the trial would be held on June 6. Answers to the interrogatories were not filed until May 22 but defendants still had approximately two weeks in which to prepare a defense. Prior to the filing of interrogatories, the defendants had secured the deposition of the plaintiff.
Code of Civil Procedure Article 1601 provides that a continuance may be granted in any case if there is a good ground therefor. In Bryer Insurance Agency, Inc. *779 v. Bruno, 261 La. 177, 259 So.2d 55 (1972), the Supreme Court stated the following:
"The rule is well established that the trial judge has wide discretion in acting upon a motion for a continuance. His ruling will not be disturbed on appeal in the absence of a clear showing of the abuse of that discretion." 259 So.2d at 57.
We do not feel that the trial judge abused his discretion in this matter and therefore find no error on his part.
The defendants allege error on the part of the trial court in granting the plaintiff a partial new trial on the issue of insurance coverage. The plaintiff in his complaint attempted to hold the defendant, Liberty Mutual liable by virtue of a policy of insurance on Riley in effect on the date of the accident. This allegation was denied in the defendants' responsive pleadings and no evidence was adduced at trial disputing this denial. The lower court's original judgment dismissed the suit as to Liberty Mutual. A motion by plaintiff for a new trial limited to the question of the liability of Liberty Mutual was granted by the trial judge and a supplemental opinion rendered by the judge found Liberty Mutual liable in solido with Riley. We note in affirming the trial court that much discretion is given to the trial judge in granting new trials when such a course of action best serves the ends of justice. The trial judge has virtually unlimited discretion to order a new trial, even on its own motion, when it is convinced that a miscarriage of justice has resulted. Furthermore, the appellate courts will not interfere in decisions of the trial courts on the matters of this nature, unless there has been a clear abuse of this discretion.[2]
For the reasons assigned, the judgment of the trial court is affirmed in all respects, except with reference to the liability of Pargas and its liability insurer. It is ordered, adjudged, and decreed that there be judgment herein in favor of the third party plaintiffs, Riley Mobile Home Sales of Louisiana, Inc., and Liberty Mutual Insurance Company, and against third party defendants, Pargas of Natchitoches, Inc. and American Motorists Insurance Company, jointly and in solido, in the sum of $2,156.41, together with legal interest from date of judicial demand until paid. It is further ordered, adjudged, and decreed that Riley Mobile Home Sales of Louisiana, Inc., Liberty Mutual Insurance Company, Pargas of Natchitoches, Inc., and American Motorists Insurance Company are cast, jointly and in solido, for all costs.
Affirmed in part, reversed and rendered in part.
NOTES
[1] Section 5.14(f)Use Gases Only for Which System is Designed: Marketers and users shall exercise precaution to assure that only those gases for which the system is designed, examined, and listed, are employed in its operation, particularly with regard to pressures.
[2] Prevot v. Williams, 306 So.2d 1377, (La. App.3rd Cir., 1975); Shows v. Williamson, 256 So.2d 688, (La.App.2nd Cir., 1972), writ refused, 261 La. 231, 259 So.2d 76; Soileau v. Fusilier, 237 So.2d 92, (La.App.3rd Cir. 1970); Strobel v. Schlegel, 145 So.2d 664, (La.App.4th Cir. 1962).