313 So.2d 266 (1975)
Meyer GLAZER et al.
v.
LOUISIANA TRAILER SALES, INC. et al.
No. 6750.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1975.
Rehearing Denied June 11, 1975.
Writ Refused September 12, 1975.
*267 Herman & Herman, Russ M. Herman, Maury M. Herman, Occhipinti, Tamberella & Grace, Anthony R. Occhipinti, Christopher T. Grace, Jr., New Orleans, for plaintiffs-appellees.
Louis A. Di Rosa, Michael E. Soileau, Adams & Reese, Joel L. Borrello, New Orleans, for defendants-appellants.
Before GULOTTA, MORIAL and BEER, JJ.
MORIAL, Judge.
Defendants appeal a judgment of the district court awarding damages for injuries sustained in an automobile collision.
Louisiana Trailer Sales, Inc. contends the district court committed error in: (1) holding Orange Reeves, the driver of its vehicle guilty of negligence; (2) dismissing its reconventional and third party demands; (3) abusing its "much discretion" in awarding damages; (4) awarding duplicitous amounts for the injuries of Marlene Glazer; and (5) failing to hold Western World Insurance Company its excess insurer in solido with all defendants for the full amount awarded each plaintiff.
*268 Western World Insurance Company argues: (1) the damage award to Marlene Glazer was excessive and an abuse the trial courts "much discretion;" and (2) the district court erred in awarding interest against Western World Insurance Company on the amount of the excess judgment from date of judicial demand.
Appellees argue that the judgment of the district court is correct and should be affirmed.
On July 22, 1966 a 1962 Ford automobile owned by Style Shop, Inc., being driven by Mark Glazer, with Marlene and Meyer Glazer as passengers, was proceeding on U.S. Highway 61 in a northerly direction. In the southbound lane was a farm tractor being driven by Clyde McGhee, a passenger car with an unknown driver, an escort vehicle being operated by Billy McDuff and a truck driven by Orange Reeves pulling a mobile home 12 feet wide and 48 feet long. Approximately 8.3 miles south of Natchez, Mississippi, the collision occurred.
A careful and thorough examination of the testimony and depositions convinces us that the detailed findings of the district court accurately and adequately describe the scenario of events which led to the collision. Accordingly, we adopt the following findings of district court:
* * * * * *
"The farm tractor was moving at a slow rate of speed. The passenger vehicle behind the farm tractor going South moved into the northbound lane to pass the farm tractor.
"Mark Glazer proceeding in the northbound lane, slowed down and moved his vehicle to the right of the northbound lane allowing a passenger car to pass, and proceeded on in his proper lane of traffic.
"Reeves, driving a tractor mobile home unit, understood that he was required to maintain a distance of 300 feet between the rear of the escort vehicle in front of him and the front of his tractor unit.
"The escort vehicle driven by Billie McDuff was traveling at a rate of speed from five to ten miles per hour. The tractor mobile home unit operated by Orange Reeves, was traveling less than two car lengths to the rear of the McDuff vehicle, at a speed of 35 MPH. The McDuff vehicle slowed and as Orange Reeves braked the mobile home he crossed over the centerline into the northbound lane of traffic with the tractor portion of his vehicle, and said tractor was extended from three to four feet into the northbound lane at an angle near perpendicular to the mobile home. Mark Glazer was proceeding North in his proper lane of traffic at 60 MPH, approximately 100 feet in front of him, the tractor moved into Mark Glazer's lane. Mark Glazer was confronted with a sudden emergency. Mark Glazer turned his vehicle to the right partially off the right shoulder of the road and the left front side of the Glazer vehicle above the left front wheel enclosure was struck by the front of the tractor driven by Orange Reeves. The Glazer vehicle was then tossed about and turned over to or three times landing in a ditch on the right side of the northbound lane of U.S. Highway 61.
"Mark Glazer's vehicle at no time entered the southbound lane of traffic, and the Court finds that he was not negligent in any manner.
"At the time of the accident Clyde McGehee, a 16 year old youth, was operating a farm tractor in the southbound lane of traffic on U.S. Highway 61. Immediately prior to the accident, McGehee was operating his farm tractor approximately 30 MPH. McGehee heard the brakes of the Reeves tractor mobile home unit and looked around to see what was behind him. He saw the tractor of the mobile home unit jackknife into the northbound lane. McGehee saw the collision occur in the northbound lane. McGehee stated that from the point where he was looking North the terrain was flat, looking *269 South there is a hill and he was at the top of the hill. As far as McGehee's view of the accident, the right or northbound lane was covered by the cab of the tractor mobile home unit driven by Orange Reeves. * * *"
The deposition of Clyde McGehee, Jr., an independent witness is convincing. He was familiar with the surrounding area. He had a clear view of the collision from the tractor he was driving. As he crested a hill, upon hearing a sudden screeching of brakes, he looked to the rear. He described the action directly preceding the accident as two events, first the jackknifing of the truck into the left lane, and secondly, the Glazer operated vehicle colliding with the truck pulling the mobile home which blocked Glazer's lane of travel.
A driver on the wrong side of a road who collides with another vehicle in its proper lane must exculpate himself of any fault however slight contributing to the accident. Simon v. Ford Motor Company, 282 So.2d 126 (La.1973); Breaux v. Valin, 138 So.2d 405 (La.App.3rd Cir. 1962).
Mark Glazer having found himself in a position of imminent peril as a result of the negligence of Orange Reeves, was not required to exercise such control or degree of care and caution required of a person who has ample opportunity for full exercise of judgment and reason. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 (1956); McGuinness v. United Services Automobile Association, 275 So.2d 485 (La.App. 1 Cir. 1973). Mark Glazer had neither time nor distance to take any effective evasive action. He did all he could under the circumstances. Accordingly, the district court properly dismissed defendants' reconventional and third party demands.
Mark Glazer the driver of the vehicle was cut on the crown of his head which required sutures at Jefferson Davis Memorial Hospital in Natchez, Mississippi. He received bruises and other contusions and testified that he experienced headaches for one to two years following the accident. His injuries healed within six to eight weeks. The trial judge awarded Mark Glazer $2,000.00 for his injuries, pain and suffering and $70.00 for special damages.
Meyer Glazer was also taken to Jefferson Davis Hospital in Natchez, Mississippi where he was complaining of pain in his right groin area, low back and above his right eye. His right eye was sutured. He was X-rayed. An electrocardiogram was administered because of prior cardiovascular problems. He was transported by ambulance to St. Francis Hospital in Monroe, Louisiana, where he was hospitalized from July 22, 1966 to July 30, 1966. The record reflects he sustained injury to the right flank, contusions of the right knee, abrasions and contusions of both lower extremities, laceration of the right upper eyelid, and contusions of the left lower rib.
He testified that he suffered with boil like blemishes on his body from which pieces of glass eventually came and then the boils healed. At the time of trial Mr. Glazer still wore a back brace and took whirlpool baths as a result of the injuries he sustained in the accident. He was awarded $5,000.00 for injuries, pain and suffering and special damages of $754.52.
Marlene Glazer was riding in the right front seat of the automobile. After the accident she remained conscious but was apparently hysterical. Her hysteria was precipitated by a fracture of her right humerus and a large irregular cut on her right forearm which was bleeding profusely. She was taken by ambulance to Jefferson Davis Memorial Hospital in Natchez where she received emergency treatment but no sedation. She was transported by ambulance to St. Francis Hospital in Monroe, Louisiana at approximately 10 or 11 P.M. Upon arrival there she was placed under an anesthetic. Her fractured right arm was set with a permanent hanging *270 type cast. At that time the large jagged laceration of the right forearm was cleaned and sutured by Dr. Rizzo. She had multiple bruises and contusions on her rib cage and bruises on her forehead. She was hospitalized from July 22 to August 1, 1966. In August of 1967 plastic surgery was performed by Dr. Neal Owens on the scar on her right forearm. This operation was not considered a total success. She was advised that she should undergo a second operation after a delay of some time in hope the possibility of reducing scar tissue would increase. The trial court described the scar as follows:[1]
". . . it is about five inches long and covers almost the entire width of her arm, and is an irregular, jagged scar which appears similar to a severe burn scar, with deep indentations where flesh was torn out."
Marlene Glazer was awarded $37,000.00 general damages and special damages of $2,735.36.
Defendants cite numerous cases in support of their arguments for a reduction of the general damage awards. However, we are bound by Miller v. Thomas, 258 La. 285, 246 So.2d 16, 19 (1971) wherein our Supreme Court stated:
"(1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the "much discretion" accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity."
An elaboration of the Miller pronouncement is found in Bitoun v. Landry and Travelers Insurance Company, 302 So.2d 278 (La.1974) where the court stated at page 279:
"* * * The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify changing the amount by the appellate court. Only when the trial court abuses its broad discretion should the award be adjusted, either up or down."
Applying LSA-R.C.C. 1934(3) and Miller and Bitoun, supra, to the evidence, we find no abuse of the trial court's "much discretion." Further the awards to Marlene Glazer are not duplicitous. She did not recover more than once for any injury.
The policy issued by Fidelity General Insurance Company the primary insurer of Louisiana Trailer Sales, Inc. contains a section on Supplementary Payments which reads:
"* * * (a) all expenses incurred by the company, all cost taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry or the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon; * * *"
The policy of Western World Insurance Company, Inc. the excess insurer of Louisiana Trailer Sales, Inc., provides:
"Limits of Liability:
The limit of Bodily Injury Liability stated in the declarations (Column II) as applicable to `each person' is the limit of the company's liability for loss, in excess of the applicable limit of primary insurance, arising out of the bodily injury sustained by one person as the result of *271 any one accident or occurrence; the limit of such liability stated in the declarations (Column II) as applicable to `each accident or occurrence' is subject to the above provision respecting each person, the total limit of the company's liability for loss, in excess of the applicable limit of primary insurance, arising out of bodily injuries sustained by two or more persons as the result of any one accident or occurrence."
The obligation of an insurer under a Supplementary Payments clause as found in the Fidelity policy is carefully explained in a well reasoned opinion in Doty v. Central Mutual Insurance Company, 186 So.2d 328 (La.App. 1 Cir. 1966) writ refused, 249 La. 486, 187 So.2d 451 (1966). Under Doty it is abundantly clear an insurer is liable for legal interest only on the amount of its applicable policy limits from the date of judicial demand until the date of signing of the judgment, although thereafter the insurer is liable for interest on the amount of judgment, including that which exceeds its applicable policy limits from date of judgment until the insurer pays or tenders the full amount which it owes.
In Richardson v. Tate et al., 269 So.2d 278, 283 (La.App. 4 Cir. 1972) this court stated:
"* * * As an excess insurer it cannot be held liable for that part of the interest (or any other liability) for which Moore's [primary] insurer is liable."
Accordingly, the judgment is amended to decree Western World Insurance Company's liability for interest on all judgments against it to be interest from judicial demand until paid, except that Western World shall not be liable for interest from date of judgment until date of payment by Fidelity General Insurance Company of principal of all judgments in favor of plaintiffs against Fidelity; in all other respects, the judgment appealed is affirmed. Defendants to pay the costs of this appeal.
Amended and affirmed.
BEER, J., dissents with written reasons.
BEER, Judge (dissenting).
I am obliged to respectfully dissent from that part of the majority opinion which affirms the award of general damages in favor of Marlene Glazer in the amount of $37,000.00.
As I interpret Miller v. Thomas, supra, and Bitoun v. Landry and Travelers Insurance Company, supra, we, the intermediate appellate court, are still allowed to consider other recent awards in similar cases as a guideline or "aid" in testing whether or not the trial court's "much discretion" has been abused.
Applying this "aid" to the material facts regarding this plaintiff's injuries, I find a sufficiently obvious distortion to trigger the application of that generally unsatisfactory word"abuse." Yet, I must use it as a result of my deliberated determination that error has been committed in the granting of an excessive award for, in my view, the award is over twice the amount that would find support in recent cases involving similar injuries.
I have respect for the industry, ability and impartiality of the trial judge. I am uncomfortable about having to use the term "abuse" with regard to his exercise of the "much discretion" that I acknowledge as his domain. I would rather say that his final determination of the general damage figure (and that of my brothers on this court) is one that I find myself unable to accept in view of the observations noted above. To the extent that my own recently acquired (and thus, perhaps, inexperienced) judicial conscience is shocked, I am obliged to categorize the amount of this award as an abuse.
I respectfully dissent.
NOTES
[1] There are no photographs in the record of the scar on plaintiff's right forearm. The trial judge viewed the scar and his appreciation of the size of the scar and the disfigurement caused by it must be given considerable weight.